IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| STARLYNN A. GARRETT, | ) | CASE NO.5:20-CV-01741 |
| | ) | |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | MEMORANDUM OPINION AND |
| COMMISSIONER OF SOCIAL | ) | ORDER |
| SECURITY. | ) | |
| | ) | |
| Defendant, | | |

**Introduction**

Before me[1] is Starlynn A. Garrett's action under 42 U.S.C. §405(g) seeking judicial

review of the 2019 decision of the Commissioner of Social Security that denied Garrett's

2017 application for supplemental security income.[2] The Commissioner has answered[3] and

---

[1] The parties consented to my exercise of jurisdiction and the matter was transferred to me by United States District Judge Solomon Oliver, Jr. in a non-document order entered on March 9, 2021.
[2] ECF No. 1.
[3] ECF No. 12.

filed the transcript of the administrative proceedings.[4] Pursuant to my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental fact sheets and charts.[8] The parties have met and conferred with the goal of reducing or clarifying the matters at issue.[9] They have participated in a telephonic oral argument.[10]

For the following reasons, the decision of the Commissioner will be affirmed.

## Facts

Garrett, who was 48 years old at the time of the hearing,[11] is a high school graduate[12] and has past relevant work experience as a nurse's aide.[13] She lives alone, although she stays with her boyfriend of twenty years on the weekends and is "fully independent with all activities of daily living."[14]

---

[4] ECF No. 13.
[5] ECF No. 6.
[6] ECF No. 14.
[7] ECF Nos. 18 (Garrett), 21 (Commissioner), 23 (Garret reply), 25, Attachment (Commissioner sur-reply), 30, supplemental authority (Commissioner).
[8] ECF Nos. 18, Attachments (Garrett), 22 (Commissioner).
[9] ECF No. 24.
[10] ECF No. 31.
[11] Tr. at 255.
[12] *Id*. at 62.
[13] *Id*. at 90.
[14] *Id*. at 33. Garrett, for her part, states that she needs the assistance of a home health aide to assist her with showering, meal preparation and cleaning. ECF No. 23 at 1, citing tr. at 722-55, 898-986.

The ALJ[15]here[16]found that Garrett has the following severe impairments: obesity; degenerative disc disease of the lumbar spine with radiculopathy; osteoarthritis of the ankles, hips and left knee, with partial tearing of the left meniscus, status post meniscectomy; hallux valgus, left foot, status-post osteotomy; inflammatory spondylopathy; incontinence, status-post bladder stimulator implantation; Meibomian gland dysfunction; bilateral eyes and glaucoma of the bilateral eyes, status-post laser trabeculoplasty; a depressive disorder, variously diagnosed as major depressive disorder, depressive disorder, and mood disorder; schizoaffective disorder; a personality disorder, diagnosed variously as borderline personality disorder, antisocial personality disorder, and mixed personality disorder with mixed antisocial and borderline traits; and post traumatic stress disorder (20 CFR 416.920(c)). This finding departs from that of the previous decision, in order to account for the severe impairment documented in the present record.[17]

After making this finding, the ALJ noted the "considerable significance" of neurological testing in 2017 and 2018 that "identified" Garrett "as a malingerer," an attribute that the ALJ noted was rooted in Garrett's intention to secure benefits and "not as the result of a severe mental disorder."[18]The ALJ supported that observation by noting, in addition to the aforementioned tests, the facts as regard her physical condition, that: (1) no

---

[15] I note that the ALJ here, Amanda Knapp, has since been made a United States Magistrate Judge for this district.

[16] Garrett previously filed an application for benefits in 2014 that was denied. That denial was then appealed to this Court in 2017, but both parties jointly stipulated to its dismissal with prejudice before a decision was entered. See, ECF No. 21 at 2, fn 1 (citing record).

[17] Tr. at 31.

[18] *Id.*

diagnostic tests were able to explain a particular "constellation of symptoms" Garrett presented; (2) "atypical pain levels;" (3) Garrett's cessation of further treatment by her rheumatologist; (4) and her discharge from pain management "for questionable behavior." As to the psychological realm, the ALJ cited: (1) Garrett's "unreliability" as a historian, *i.e*, "making reports at variance with observed behavior;" (2) requesting controlled substances; (3) and exhibiting no evidence of "internal stimulation" despite "regular and ongoing reports of hallucinations."[19]The ALJ found further evidence in Garrett's claims to the Social Security Administration that her daily activity was limited to eating, watching television and taking medication, while reporting to her rheumatologist that she is fully independent in all activities of daily living.[20]

Accordingly, the ALJ concluded that the evidence here would need to be analyzed with "significant attention to the objective evidence of record" and by "treating all subjective allegations with great caution."[21]

After then observing that Garrett's obesity would not result in any greater limitations than those imposed, that no treating or examining source found that the impairments met a listing, and that none of the state agency reviewers concluded that

---

[19] *Id*. I note that these observations are nearly identical to those made by Laura Sprague, APRN (advanced practice registered nurse), who "diagnosed" Garrett as malingering in December 2017. *Id*. at 865. The ALJ cited these in her review of these elements as supportive of the diagnosis of malingering. *Id*. at 31. Sprague's notations of these other features were made after that diagnosis. *Id*. at 583 (Jan. 2018 – unreliability as a historian); 870, 876 (May 2018 – requesting controlled substances); and 867 (Aug. 2018 – no internal stimulation despite ongoing reports of hallucinations).

[20] *Id*.

[21] *Id*.

Garrett's impairments met or medically equaled a listing, the ALJ then found that Garrett does not have an impairment or combination of impairments that meet or medically equal a listed impairment.[22] The ALJ paid particular attention to Listings 1.02 (active rheumatoid arthritis or other inflammatory arthritis); Listing 1.04 (disorders of the spine); Listing 2.02 (loss of central visual acuity); Listing 14.09 (inflammatory arthritis); 12.03 (schizophrenia); 12.04 (affective disorders) and Listing 12.08 (personality disorders).[23] As to the last listings concerning mental limitations, the ALJ found, when considering the "B" criteria, that Garrett has only moderate limitations in all four areas.[24]

The ALJ determined that Garret had an RFC for light work, with certain additional limitations.[25]That RFC was based on a four-page review of clinical evidence[26] and on consideration of reports from state agency consultative sources as to Garrett's medical and psychological condition.[27]The ALJ found the opinions of the medical reviewers "partially persuasive" because Garrett "has accumulate additional adversities" since those reports were prepared.[28]As to the psychological consultants, the ALJ found their opinions to be persuasive since they were consistent with and supported by the evidence.[29]

---

[22] *Id*. at 32.
[23] *Id*.
[24] *Id*.
[25] *Id*. at 34.
[26] *Id.* at 35-39.
[27] *Id*. at 40.
[28] *Id*.
[29] *Id*. at 41.

Lastly, the ALJ found a 2017 opinion from Amanda DeWeese, a caseworker at Community Support Services who assisted Garrett in applying for disability benefits,[30] was only partially persuasive since it was broadly consistent with the evidence but "overstate[s] [Garrett's] limitations to a considerable degree."[31]

After finding that Garrett could not perform her past work as a nurse's aide, and with the testimony of a VE, the ALJ determined that Garrett could perform the duties of housekeeper, office helper, and mail clerk, and that jobs for all these functions exist in significant numbers in the national economy.[32]

Garrett was thus found to be not disabled.[33]

## Analysis

This matter is reviewed under the long-established substantial evidence standard which need not be restated here. Further, the opinion evidence is considered under the most recent rubric that assesses the persuasiveness of such evidence.

Garrett frames the issue in this matter as whether the ALJ erred when she viewed the evidence as supporting her conclusion that Garrett was malingering and so failed to

---

[30] *Id*. at 558-64.
[31] *Id*. at 41.
[32] *Id.* at 42-43.
[33] *Id*. at 43.

provide substantial evidence in support of the RFC.[34]   Garrett further contends in this regard that the ALJ's discussion of malingering "demonstrated the ALJ's desire to find that Garrett was malingering, and, therefore, not disabled."[35]

Garrett argues that the diagnosis of malingering should be understood in the context of an earlier 2017 evaluation at the Traumatic Stress Center that found Garett had major depressive disorder recurrent severe with psychotic features, PTSD, bur ruled out dissociative identity disorder.[36]She suggests that what may have appeared as malingering or self-seeking, could also be understood as "a factitious disorder" - a serious mental disorder in which a person, not understanding the reasons for their behavior, deceives others by appearing sick.[37]In any event, she contends, by "focusing on the possible diagnosis of malingering and treating all the psychological records with caution," the ALJ committed "harmful error in this matter necessitating a remand."[38]

Garrett also takes issue with the fact that the opinions of the state agency reviewers were simply adoptions of the prior RFC in the case where the judicial review was eventually dismissed.[39]In addition, she contends that these state agency opinions were done in 2017 and don't reflect the most current evidence.[40]

---

[34] ECF No. 18 at 1.
[35] *Id*. at 12.
[36] *Id*. at 15.
[37] *Id*. at 16.
[38] *Id*.
[39] *Id*. at 18.
[40] *Id*.

I address the issues presented in reverse order. First, as to how the current ALJ handled the opinions of the state agency reviewers, notwithstanding the additional briefing on the subject of the valid appointment of administrative law judges and the effect of such appointments on their decisions, any prior decision is not at issue here.  Only the 2019 decision is under review. Next, although the current ALJ noted the prior decision and its relevance to a limited period between May 2014 and May 2016, she also expressly noted that new material evidence had come into the record since that time, particularly as to the presence of additional impairments and limitations.[41]

Accordingly, she declined to adopt the prior RFC.[42]Similarly, she expressly noted that the state agency reviewers' physical limitation opinion was only partially persuasive, since Garrett had "accumulated additional adversities."[43]Similarly, as to psychological limitations, the ALJ was careful to note in two places – immediately after the statement of the RFC[44]and again in discussing the opinion evidence[45]- that the support for the RFC here includes, by explicit mention as "within the period relevant to the present claim,"[46] This is a reference to Garrett's eight separate 2017 and 2018 diagnoses of major depressive disorder, mood disorder, schizoaffective disorder, borderline personality disorder with

---

[41] *Id*. at 28, 30-31.
[42] *Id.* at 30-31, 34,
[43] *Id.* at 40.
[44] *Id*. at 38-39.
[45] *Id*. at 40-41.
[46] *Id*. at 38.

antisocial personality disorder, mixed personality disorder with antisocial and borderline traits and post-traumatic stress disorder.[47]

In no way does this comprehensive review of the clinical evidence that came into the record after May 2016 indicate that the ALJ merely rubberstamped the RFC of the prior case. Further, by noting this new evidence in such a comprehensive fashion, the ALJ also provided a logical, well-supported basis for why she could find the opinions of the state agency reviewers to be persuasive, and "consistent with, and supported by, the overall evidence of record," including that evidence developed since those opinions were issued.

Finally, as to the issue of whether the ALJ erred by noting the diagnosis of malingering, I observe that this diagnosis was not invented by the ALJ but exists in the record.[48]Moreover, every example citied by the ALJ as supporting that finding also exists in the record – either from the source that originally made the diagnosis, as noted above, or from a the December 2017 and January 2018 examining neuropsychologist Danielle Sims, who noted that Garrett's performance on the administered tests was consistent with individuals who are "intentionally faking impairment of memory" and "feigned psychopathology."[49]

Thus, despite Garrett's attempt in the briefs to suggest an alternative explanation for the malingering diagnosis, that alternative explanation has no evidentiary support in the

---

[47] *Id*.
[48] *Id*. at 865.
[49] *Id*. at 591, 588.

clinical records which, to the contrary, support the finding of malingering. Given that this diagnosis is clearly stated in the record and is otherwise supported by additional clinical tests that also rule out the alternative suggested by Garrett, I find no error in the ALJ recognizing that diagnosis and properly utilizing it as an analytical lens.

## Conclusion

For the reasons stated, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.                                          Signed by:
Dated: March 28, 2022                                       s/William H. Baughman Jr.
                                                                  United States Magistrate Judge